## JOSE AVALO SANCHEZ

*v.*

## CONCEPCIÓN VEVE ET AL.

---

San Juan, Equity, No. 379.

1. Whenever the court can see, even though a bill in equity is ingeniously

Sanchez v. Veve.

framed so as to try to show jurisdiction and equity, that in fact the whole subject-matter of the litigation was settled in the Spanish courts years before American occupation of Porto Rico, a plea of *res judicata* may be considered in the nature of a demurrer and the bill dismissed for want of equity.

2. See the memorandum giving court's reasons for dismissing the case for want of equity.

Opinion filed February 13, 1909.

---

*Mr. Henry F. Hord,* attorney for the complainant.

*Mr. H. L. Belaval, Messrs. Pettingill & Leake, J. de Guzman Benitez,* and *Messrs. Hartzell & Rodriguez,* attorneys for respondents.

RODEY, Judge, delivered the following opinion:

This is a most extraordinary suit. Our jurisdiction is based upon diverse citizenship and the amount involved. The complainant, José Avalo Sanchez, alleges that in the year 1885, twenty-four years ago, he was indebted to one Maria Diaz in the sum of 5,600 pesos of the then current money in Porto Rico. This Mrs. Diaz is the mother of some and the grandmother of others of the present respondents.

The complainant mortgaged a finca or farm of 400 acres that he had near Humacao, to this lady, to secure this money, for two years, with interest. Pending the running of the loan, he undertook to collect for her 16,000 pesos that were due her from others and represented by three notes. While he was trying to collect this money for her, she, as he alleges, settled

IV. PORTO RICO—29.

Sanchez v. Veve.

directly with the parties that owed it, and then wanted him to give up the notes. He refused to do it unless she would give him a third of their face value; in fact, enough to cancel the mortgage he owed her. She agreed to do this, as he says, although the present respondents deny it, upon his delivering the three notes back to her. He delivered two of them, and the third he could not just then get, as it was filed in court. Afterwards he went to the court for it, and found, as he says, that it had been stolen by an agent of this woman to whom he owed the mortgage. Then later this Mrs. Diaz brought a suit to foreclose her mortgage against him, but he alleges that he defeated the suit on showing these facts. She appealed from this and had it reversed. The higher court held that he must bring a direct suit against her for the property if it should be adjudicated to her in the meantime, which it seems it was, and must criminally prosecute the person who stole the note. Later in his bill he alleges that, at a much later date in these long-drawn-out proceedings, he got possession of this missing note, and delivered it to this lady, and thus claims that he has finally completed his alleged contract with her. He brought this direct suit, as thus instructed by the superior court, against her, but the judgment went against him, and this evidently after a full showing of all the issues he is endeavoring to try in this court now. He appealed from this judgment some six or seven years before American occupation of Porto Rico. He alleges that, because of the dilatory tactics of the said Mrs. Diaz and her agents, and because of the interposition of all sorts of dilatory motions, he was unable to get a decision of this appeal before American occupation of the island, and finally it got into the district court at San Juan, and that

Sanchez v. Veve.

the records or a portion of them were stolen from there, and that in 1904 the local legislature abolished this district court at San Juan, and failed to give any other court jurisdiction of the cause.

He sets up all this in great detail and makes a lame effort to excuse his long delay through all the years, and prays that the whole thing be set aside and he be declared to be the owner of the premises, and given possession of the same, etc., etc. He filed his bill in this court on April 3, 1906, which he alleges was the first time he had a right to file it, as he was under the supervision of some sort of a trustee in bankruptcy for many years, but does not satisfactorily tell why his trustee in bankruptcy did not attend to these appeals for him From this date up to September of that year a large number of amendments of the bill and a large amount of pleading, demurring, etc., was indulged in, and on September 12, 1906, the bill was completely rewritten and the battle virtually begun over again. Shortly thereafter some additional pleading was indulged in, and on April 8, 1908, a considerable amount of amending of the bill took place.

The respondents severally pleaded *res judicata* because of the recovery in the insular courts. Complainant's counsel moves to strike this plea because the same, he contends, should be a demurrer, as he alleges that all the facts set up in the plea appear on the face of the bill. We have given a great deal of attention to the bill, the demurrers, pleas, answers in support of them, etc., etc., in this cause, and can truthfully state, as we did when beginning this memorandum, as above, that it is a most peculiar case.

We fail to appreciate the technical position taken by counsel

Sanchez v. Veve.

for complainant when he moves to strike the pleas that are now into his last amended bill. We have gone over the record so closely and examined the briefs of counsel to such an extent as that we feel we are now enabled to say from the record that there is in fact no equity in the bill at all. That its allegations show nothing on the part of complainant but an effort to excuse his own inexcusable laches, and to induce this court of concurrent jurisdiction, that has no appellate jurisdiction from the insular courts, to take hold of a case that has, in substance and in fact, been tried and settled finally in those courts, and in which the complainant was beaten at every turn after a full hearing. It would tire one to detail in a memorandum like this the different phases and issues of this litigation that were tried out even unto the supreme court of the island of Porto Rico many years before American occupation. The bill, as here filed, although the same was afterwards left out when the bill was amended, charged fraud and corruption against different judges, courts, and officials connected with the matter in the time of the Spanish *régime*, and even as finally amended, charges all sorts of deception, intrigue, and fraud against some of these respondents, and all of which they deny in their answers filed in support of their pleas.

We do not think, in the first place, that complainant has shown any diligence in and about his rights or the prosecution of his appeals; and, in the second place, we do not think it is the affair of this court, if in fact the legislature deprived him of any alleged right regarding his appeal. The expression used by Mr. Justice Brewer when delivering the opinion of the court in Cessna v. United States, 169 U. S. 186, 42 L. ed. 710, 18 Sup. Ct. Rep. 304, that "it is the duty of a nation

Sanchez v. Veve.

receiving a cession of territory to respect all rights of property as those rights were recognized by the nation making the cession, but it is no part of its duty to right the wrongs which the grantor nation may have theretofore committed upon every individual," has some application by analogy here. While the treaty provides that property rights should be respected, and that all suits begun at the date of the treaty should be carried to a finality in the courts where they were or those that were substituted for them, still, when matters were settled by the Spanish courts during the Spanish *régime* in Porto Rico or since, we cannot see that this court, not having any appellate jurisdiction, has any right to interfere.

We have given this matter a great deal more attention than the writing of this mere memorandum would indicate, and we have examined the elaborate brief filed by counsel for respondents with great care, and we have concluded that it is our duty to ignore the motion to strike the plea, and to, at this time, end the entire proceeding by holding, as we do, that the plea of *res judicata* is well founded in fact and in law, and that, even without the pleas, the allegations of the bill itself constitute no cause of action in law that would entitle complainant to file a bill. This presents a square issue of law that can be passed upon by a higher court, if necessary, and is a much better mode of disposing of the cause than endeavoring to take a vast amount of proofs that, in our opinion, would be useless for lack of equity in the bill itself. The pleas will therefore be sustained, and the bill will be dismissed with costs, and all cautionary or *lis pendens* notices will be released unless superseded on appeal, and a decree to that effect will be entered.